COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550 6420

KYLE C. WONG (224021)
(kwong@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000
Facsimile:  +1 415 693 2222

JESSIE SIMPSON LAGOY (305257)
(jsimpsonlagoy@cooley.com)
ZANETA J. KIM (317844)
(zkim@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:  +1 650 843 5000
Facsimile:  +1 650 849 7400

Attorneys for Defendant
*Overstock.com, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LICEA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>OVERSTOCK.COM, INC., a Delaware Corporation; and DOES 1 through 25, inclusive,<br><br>                    Defendants. | Case No. 3:22-cv-01594-JLS-JLB<br><br>**DEFENDANT OVERSTOCK.COM, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 6, 2023<br>Time: 1:30 PM<br>Dept: Courtroom 4D (4th Flr)<br>Judge: Hon. Janis L. Sammartino |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on April 6, 2023 at 1:30pm, Defendant Overstock.com, Inc. ("Overstock) will and hereby does move the Court for an order dismissing with prejudice the complaint of Plaintiff Jose Licea pursuant to Federal Rules of Civil Procedure 12(b)(6).

   This motion is made on the grounds that Plaintiff's claims for violation of California's Invasion of Privacy Act ("CIPA") under Cal. Penal Code §§ 631 and 632.7 fail as a matter of law.

   This motion is based on this notice and motion, the below memorandum, all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this motion.


Dated: January 24, 2023                    COOLEY LLP


                                           By: */s/ Kyle C. Wong*
                                              Kyle C. Wong

                                           Attorneys for Defendant
                                           *Overstock.com., Inc.*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARD .......................................................................................... 5

IV.  ARGUMENT ....................................................................................................... 6

   A.  Plaintiff's Complaint Fails Under Rule 8(a) ..................................................... 6

   B.  Plaintiff Consented to the Recording of His Chats by Overstock .................... 6

   C.  Plaintiff Fails to State a Claim Under Section 631(a) ....................................... 7

     1.  Plaintiffs' section 631(a) claim fails as a matter of law because Overstock cannot wiretap or eavesdrop on its own communications. .................................. 8

     2.  Plaintiff cannot state a claim under aiding and abetting theory of liability. 10

     3.  Plaintiff fails to state a claim under any of the operative clauses ................ 14

       a.  Plaintiff fails to state a claim under the first clause because it does not apply to internet communications. .................................................................... 14

       b.  Plaintiff fails to state a claim under the first clause because the software allegedly employed by Overstock is not a "machine, instrument, or contrivance." ..................................................................................................... 16

       c.  Plaintiff fails to state a claim under the second clause, because he failed to allege interception of any "content" while "in transit." .................................. 17

         i.  Plaintiff has not alleged any "contents." ............................................... 17

         ii.  Plaintiff has not alleged any interception "in transit." .......................... 18

       d.  Plaintiff fails to state a claim under the third clause, because his claims under the first two clauses fail ........................................................................ 20

   D.  Plaintiff Fails to State a Claim Under Section 632.7. ..................................... 21

V.  CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
   No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2,
   2021) ........................................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983) ...................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................5, 6

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................11, 17

*Commw. v. Proetto*,
   771 A.2d 823 (Pa. Super. 2001) .................................................................7

*Corley v. U.S.*,
   556 U.S. 303 (2009) .................................................................................23

*Crowley v. CyberSource Corp.*,
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...................................................16

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015)...........................................6, 16, 18

*In re Facebook Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .....................................................................6

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................5

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020).................................................14, 21

Cooley LLP
Attorneys at Law
San Diego

iii

Defendant's Motion to Dismiss
3:22-cv-01594-JLS-JLB

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ........................................................................ 9

*Graham v. Noom*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021)...........................................................*passim*

*Hammerling v. Google LLC*,
   No. 21-cv-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18,
   2022) ........................................................................................................ 18

*Hataishi v. First Am. Home Buyers Protection Corp.*,
   223 Cal. App. 4th 1454 (2014)................................................................... 21

*Imperial Merchant Servs., Inc. v. Hunt*,
   47 Cal. 4th 381 (2009).............................................................................. 23

*Javier v. Assurance IQ, LLC*,
   20-cv-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ................. 14, 15

*Javier v. Assurance IQ LLC*,
   No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ...................... 15

*Johnson v. Blue Nile, Inc.*,
   No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)............ 17

*Kearny v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006)................................................................................ 22

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012).................................................................. 11

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002)...................................................................... 19

*Licea v. Chewy, Inc.*,
   No. 22CV1852 (S.D. Cal. Nov. 23, 2022) ................................................... 3

*Licea v. Genesco, Inc.*,
   No. 22CV1567 (S.D. Cal. Oct. 12, 2022) .................................................... 3

*Licea v. Logitech Inc.*,
   No. 22CV1490 (S.D. Cal. Oct. 2, 2022) ...................................................... 3

*Licea v. Payless Shoesource Worldwide, LLC*,
   No. 22CV1586 (S.D. Cal. Oct. 14, 2022) .................................................... 3

*Licea v. Sunroad Auto Holding Corp.*,
    No. 37-2022-46821 (Super. Ct. San Diego Cnty. Nov. 18, 2022) ...................... 3

*Licea v. Tommy Hilfiger U.S.A., Inc.*,
    No. 22CV1851 (S.D. Cal. Nov. 23, 2022) ........................................................... 3

*Licea v. Uniqlo USA LLC*,
    No. 22CV1489 (S.D. Cal. Oct. 2, 2022) ............................................................. 3

*Licea v. Vitacost.com, Inc.*,
    No. 22CV1854 (S.D. Cal. Nov. 25, 2022) ........................................................... 3

*Licea v. Wolverine World Wide, Inc.*,
    No. 22CV1564 (S.D. Cal. Oct. 12, 2022) ........................................................... 3

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................. 15, 19, 22

*Meacham v. El Pollo Loco, Inc.*,
    No. 30-2016-00888774-CU-BT-CXC, 2020 WL 7866013 (Cal.
    Super. Sept. 10, 2020) ..................................................................................... 21

*Membrila v. Receivables Performance Management, LLC*,
    No. 09-cv-2790-IEG (RBB), 2010 WL 1407274 (S.D. Cal. April 6,
    2010) ............................................................................................................... 5, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................ 5

*Metcalf v. Cnty. of San Joaquin*,
    42 Cal. 4th 1121 (2008) .................................................................................... 23

*Mireskandari v. Mail*,
    No. CV 12-02943 MMM, 2013 WL 12129559 (C.D. Cal. July 30,
    2013) ................................................................................................................ 19

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .............................................................. 19

*Potter v. Havlicek*,
    No. 3:06-cv-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ...................... 16

*Powell v. Union Pac. R.R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................... 10, 12, 13

*Quigley v. Yelp, Inc.*,
  No. 17-cv-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)................20

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)............19, 20

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975)....................................................9, 11, 12, 13

*Rosenow v. Facebook, Inc.*,
  No. 19-cv-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr.
  27, 2020)..........................................................................................5, 20

*Russello v. United States*,
  464 U.S. 16 (1983) ...................................................................................23

*Shayler v. 1310 PCH, LLC*,
  No. 21-56130, 2022 WL 13743415 (9th Cir. Oct. 24, 2022)............................1

*Smith v. LoanMe, Inc.*,
  11 Cal. 5th 183 (2021).....................................................................7, 9, 23

*State v. Lott*,
  152 N.H. 436 (2005).....................................................................................7

*State v. Townsend*,
  147 Wash. 2d 666 (2002) .............................................................................7

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ....................................................................12

*Tavernetti v. Super. Ct.*,
  22 Cal. 3d 187 (1978)......................................................................8, 20, 21

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017).................................................18, 20

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) .......................................................................8, 9

*Williams v. WhatIf Holdings, LLC*,
  No. C 22-0378, WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22,
  2022) ..........................................................................................................5

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANT'S MOTION TO DISMISS
3:22-CV-01594-JLS

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................ 17

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ......................................................................... 17

**Statutes**

18 U.S.C.
   § 2510 *et seq*. .................................................................................................. 18
   § 2511(2)(c) ................................................................................................... 11
   § 2511(2)(d) ................................................................................................... 11

Cal. Penal Code
   § 630 ............................................................................................................... 8
   § 631(a) ................................................................................................... *passim*
   § 632.7 .............................................................................................. 2, 21, 22, 23
   § 632.7(a) ....................................................................................................... 22

Federal Rules of Civil Procedure
   Rule 8(a) ................................................................................................ 5, 6, 12
   Rule 11 ............................................................................................................ 12
   Rule 12(b)(6) ............................................................................................... 5, 18

**Other Authorities**

*Black's Law Dictionary* (11th Ed. 2019) ............................................................ 8

*Webster's Ninth New Collegiate Dictionary* 630 (1985) ........................................ 19

Cooley LLP
Attorneys at Law
San Diego

vii

Defendant's Motion to Dismiss
3:22-cv-01594-JLS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case is one of nearly 50 cookie cutter complaints filed by the same plaintiff's counsel throughout California alleging that various retail websites, like Defendant Overstock.com ("Overstock"), violated California's wiretapping laws. Specifically, the suits allege that these websites offer users a chat feature giving them the ability to communicate (or "chat") with the website, and that the websites then wiretap *their own conversations* with these users by recording the chats without user consent in violation of sections 631 and 632.7 of the California Invasion of Privacy Act ("CIPA"). But there is nothing nefarious or unexpected when a party to a chat conversation keeps a record of that conversation; recording is, in fact, a necessary requirement of the chat feature. A user in such a conversation knows that her message must be recorded so that it can be sent and read by the recipient. By painting these commonplace (and voluntary) consumer interactions as criminal "wiretapping" and "eavesdropping" under CIPA, Plaintiff's counsel essentially seeks to criminalize an innocuous customer service in pursuit of significant statutory damages.[1] The Court should reject these extortionate and meritless claims, which fail for the reasons stated below.

As a preliminary matter, Plaintiff's Complaint contains nothing but conclusory recitations of sections 631 and 632.7's elements without sufficient details to give fair notice of his claims and their bases to Overstock, in violation of Federal Rule of Civil Procedure ("Rule") 8(a). For example, while his entire section 631 claim rests upon Overstock's alleged conduct via its chat feature, Plaintiff does not even allege that he used the chat feature to communicate with Overstock—just that he visited the Website and had a "conversation" of indeterminate length and substance with Overstock. Nor does he provide the date of this communication, or the actual

---

[1] These types of serial litigations have been criticized by the Ninth Circuit for using courts to extort businesses with a "wave of 'get-money-quick' lawsuits." *Shayler v. 1310 PCH, LLC*, No. 21-56130, 2022 WL 13743415, at *3 (9th Cir. Oct. 24, 2022).

contents of the alleged chat at issue.  The Complaint can be dismissed on this basis alone.

Even if the Complaint met Rule 8's notice requirements (it does not), both of Plaintiff's CIPA claims would still fail as a matter of law because Plaintiff implicitly consented to any recording.  Unlike telephone conversations, written chat messages must be recorded in order to be conveyed to and read by the recipient.  Through Plaintiff's very act of sending a written message to Overstock, he consented to the recording of those messages, an outcome fatal to his CIPA claims.  Moreover, as a party to the communication, Overstock cannot be held liable, either directly or under an aiding and abetting theory of liability, for recording or creating transcripts of its own communications, because eavesdropping can only be done by a third party.

Lastly, both of Plaintiff's individual CIPA claims fail to allege the required elements sufficient to survive a motion to dismiss.  As to section 631(a), Plaintiff fails to show that, among other things, any "contents" of his communications were intercepted before they reached their intended recipient, Overstock.  As to section 632.7, Plaintiff fails to show that his chat communications involved two telephonic devices as required under the statute; instead, he alleges that he communicated with Overstock's Website over the Internet using a smartphone.

For these reasons and those that follow, the Court should dismiss the Complaint in its entirety.

## II.   BACKGROUND

Overstock is an online retailer that offers home good products for sale through its website, https://www.overstock.com ("Website").  (Smith Decl. ¶ 2.)   The Website, like many other online retailers, allows its visitors to ask questions about the products and policies on its Website via a chat feature.  (*Id.*)[2]

---

[2] The browser-based chat feature, however, appears to be unavailable via Overstock's Website—specifically through its "Help Center" and "Contact Us" pages–when accessed through a smartphone.  (Smith Decl. ¶¶ 3-6.)  Rather, visitors accessing the Website through a smartphone are prompted to text/message any inquiry they may have using their text/message application.  (*Id.*)  Plaintiff does not allege that he

Plaintiff is an alleged "consumer privacy advocate" or a "tester" who is "interested in learning more about the goods and services offered" by Overstock. (Dkt. 1, Complaint ("Compl.") ¶ 13.)   On October 16, 2022, Plaintiff filed his complaint alleging that Overstock "wiretapped" Plaintiff and its other Website users who opted to contact Overstock via its Website's chat feature, and that Overstock "enabled" its vendor, Salesforce, to "eavesdrop" upon those chat conversations.  (*Id.* ¶ 11.)  This is one of at least fifteen lawsuits that Plaintiff has brought against a retail website as a named plaintiff on behalf of a putative class, and the allegations are nearly identical to his claims in those other suits.[3]

The Complaint's allegations about Plaintiff's own actions on the Website are scant.  Plaintiff alleges that he "visited [Overstock's] website and "used a smart phone" to have a single "conversation" with Overstock at some unidentified point "within the last year." (*Id.* ¶ 17.)  Notably, however, Plaintiff does *not* allege that he was in California when he accessed Overstock's Website; he could have accessed it

_____

exchanged any texts/messages with Overstock outside the "chat feature" available through the web browser.

[3] All fifteen actions filed by Plaintiff assert the same "wiretapping" claims based on the same type of interactions with other retailers' online chat platforms.  Eleven of these actions were filed in the Southern District of California; one in the Central District of California; one in the Northern District of California; and two in the Superior Court of San Diego Country.  Many of Plaintiff's allegations are copied from one complaint to the next.  For example, Plaintiff's allegation that "[g]iven the nature of Defendant's business, visitors often share highly sensitive data with Defendant via the website chat feature" (Compl. ¶ 13) is used *verbatim* in his lawsuits against ten other defendants.  *See Licea v. Logitech Inc.,* No. 22CV1490 (S.D. Cal. Oct. 2, 2022) Complaint (ECF No. 1), ¶ 13*; Licea v. Uniqlo USA LLC,* No. 22CV1489 (S.D. Cal. Oct. 2, 2022) Complaint (ECF No. 1), ¶13; *Licea v. Genesco, Inc.,* No. 22CV1567 (S.D. Cal. Oct. 12, 2022) Complaint (ECF No. 1), ¶ 13; *Licea v. Wolverine World Wide, Inc.,* No. 22CV1564 (S.D. Cal. Oct. 12, 2022) Complaint (ECF No. 1), ¶ 13; *Licea v. Payless Shoesource Worldwide, LLC,* No. 22CV1586 (S.D. Cal. Oct. 14, 2022) Complaint (ECF No. 1), ¶ 13; *Licea v. Vitacost.com, Inc.,* No. 22CV1854 (S.D. Cal. Nov. 25, 2022) Notice of Removal with Complaint (ECF No. 1), ¶ 14; *Licea v. Tommy Hilfiger U.S.A., Inc.,* No. 22CV1851 (S.D. Cal. Nov. 23, 2022) Notice of Removal with Complaint (ECF No. 1), ¶ 14; *Licea v. Sunroad Auto Holding Corp.,* No. 37-2022-46821 (Super. Ct. San Diego Cnty. Nov. 18, 2022) Complaint (ECF No. 1), ¶ 14; *Licea v. Tommy Hilfiger U.S.A., Inc.,* No. 22CV1851 (S.D. Cal. Nov. 23, 2022) Notice of Removal with Complaint (ECF No. 1), ¶ 14; *Licea v. Chewy, Inc.,* No. 22CV1852 (S.D. Cal. Nov. 23, 2022) Notice of Removal with Complaint (ECF No. 1), ¶ 14.

from anywhere.  Nor does he allege that he himself shared any personal data, let alone any "highly sensitive personal data," with Overstock through its chat feature, even though he claims that "visitors often share highly sensitive personal data with Defendant via the Website chat feature."  (Compl. ¶ 13.)  Instead, the Complaint is devoid of any allegations as to what content, if any, Plaintiff shared with Overstock.  (*Id*.)  Indeed, Plaintiff could have ended the chat before sharing any content at all.

Plaintiff asserts a wiretapping claim against Overstock, the other party to his alleged communication.  Plaintiff alleges Overstock wiretapped its own conversation with him by "embedd[ing] code into its chat feature that automatically records and creates transcripts of all such conversations."  (*Id*. ¶ 11; *see also id.* Introduction ("Defendant . . . secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.overstock.com (the 'Website')").)  Plaintiff does not allege how Overstock's "embedded code" intercepts these conversations or that the interception occurs during transmission.

Plaintiff's eavesdropping claim against Overstock is based on allegations that are just as sparse.  The Complaint alleges that Overstock "enable[d] eavesdropping" because it "allows at least one independent third-party vendor (on information and belief, Salesforce) to secretly intercept (during transmission and in real time), eavesdrop upon, and store transcripts of [Overstock's] chat communications" with Website visitors who initiated chat exchanges.  (*Id*. ¶ 11.)  Aside from these conclusory allegations, the Complaint does not allege any facts to show how Salesforce "intercepted" Plaintiff's conversation, or when that interception occurred.  Nor does the Complaint make any attempt to explain the mechanism in which Salesforce intercepted the chat communications "during transmission and in real time."  (*Id*.)  To the extent the Complaint describes the interception process at all, it implies that Overstock first "automatically records and creates transcripts" of the conversations and then separately allows Salesforce to "intercept, eavesdrop on, and store" those transcripts.  (*Id*.; *see also id.* Introduction; *id.* ¶ 13 ("Defendant secretly

1    records those conversations, and . . . allows a third party to eavesdrop on those

2    conversations in real time"); *id.* ¶ 24.)

3    ## III.    LEGAL STANDARD

4           Rule 8(a) of the Federal Rules of Civil Procedure requires plaintiffs to plead a

5    claim with enough specificity to "give the defendant fair notice of what the claim is

6    and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545

7    (2007).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must thus plead

8    "enough facts to state a claim to relief that is plausible on its face." *Williams v.*

9    *WhatIf Holdings, LLC*, No. C 22-0378 WHA, 2022 WL 17869275, at *1 (N.D. Cal.

10   Dec. 22, 2022) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also*

11   *Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WQH-MDD, 2020 WL 1984062, at *7

12   (S.D. Cal. Apr. 27, 2020) (same, dismissing Electronic Communication Privacy Act

13   ("Wiretap Act") claims for failure to allege interception of chat messages).

14   "Threadbare recitals" of the elements of a cause of action "do not suffice," *Ashcroft*

15   *v. Iqbal*, 556 U.S. 662, 678 (2009), and courts do not "accept as true allegations that

16   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

17   *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A court cannot

18   fill in the gaps of a complaint, either, such that "[i]n spite of the deference the court

19   is bound to pay to the plaintiff's allegations, it is not proper for the court to assume

20   that 'the [plaintiff] can prove facts [he or she] has not alleged or that defendants have

21   violated the . . . laws in ways that have not been alleged.'" *Membrila v. Receivables*

22   *Performance Management, LLC*, No. 09-cv-2790-IEG (RBB), 2010 WL 1407274, at

23   *2 (S.D. Cal. April 6, 2010) (*quoting Associated Gen. Contractors of Cal., Inc. v.*

24   *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Dismissal is appropriate

25   under Rule 12(b)(6) "where the complaint lacks a cognizable legal theory or

26   sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

27   *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

28

## IV.   ARGUMENT

### A.   Plaintiff's Complaint Fails Under Rule 8(a)

Rule 8(a) requires Plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give Overstock fair notice of the claim and its basis; this requires Plaintiff to plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.   To satisfy Rule 8(a) and avoid dismissal, Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 555, 570; *see also Graham v. Noom*, 533 F. Supp. 3d 823, 830 (N.D. Cal. 2021).

The Complaint's central allegations of wiretapping are at best conclusory recitations of sections 631 and 632.7's elements devoid of any actual details.   For example, Plaintiff does not plead that he personally used the chat feature on Overstock's Website to have his "conversation" with Overstock.   Nor does he plead when this "conversation" took place or that he was in California when it occurred. He does not plead facts about the alleged content of his conversation, or that such content was intercepted before it was received by its intended recipient—Overstock. Nor does he allege how Salesforce "intercept[ed]" his conversation, or that Salesforce's interception involved tapping a telephone or telegraph wire, line, cable, or instrument.   As such, the Complaint fails under Rule 8(a) and must be dismissed. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 929 (N.D. Cal. 2015) ("A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted."), *overturned on other grounds*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).

### B.   Plaintiff Consented to the Recording of His Chats by Overstock

Plaintiff also cannot recover under either section 631 or 632.7 because he consented to the recording of his alleged chat conversations.   A person who sends

written electronic communications (such as chat messages and emails) consents to the recording of those communications by the recipient, as a matter of logic and as a matter of law, because unlike a telephone conversation, the nature of an electronic communication *requires* that the communication be recorded for transmission to, and reception by, the recipient.  *See State v. Lott*, 152 N.H. 436, 441 (2005) ("Like an e-mail message . . . , the recording of the instant message is necessary for the intended recipient of that message to read the message"); *Commw. v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001) ("Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message.  By the very act of sending a communication over the Internet, the party expressly consents to the recording of that message."); *State v. Townsend*, 147 Wash. 2d 666 (2002) (finding that recording of emails was not unlawful because the sender had consented to the recordings).

Plaintiff alleges he initiated a conversation with Overstock on its Website and implies (but does not directly allege) that he used the Website's chat feature.  (Compl. Introduction; *id.* ¶¶ 15, 17–20.)  It is uncontroverted that the chat feature is a written medium, requiring the parties to a conversation to record their messages and send them to each other.  Thus, by initiating a chat conversation with Overstock, Plaintiff recorded his portion of the conversation, sent it to Overstock, and received Overstock's portion of the conversation in return.  In other words, Plaintiff consented to Overstock recording their conversation by voluntarily participating in this medium; this incontrovertible fact is thus fatal to his CIPA claims.  *Smith v. LoanMe, Inc.* ("*LoanMe*"), 11 Cal. 5th 183, 194 n.4 (2021) (noting that some electronic communication media necessitate consent to record by both parties).

### C.   Plaintiff Fails to State a Claim Under Section 631(a)

As laid out by the California Supreme Court, section 631(a) contains three operative clauses covering "three distinct and mutually independent patterns of

conduct:" (1) "intentional wiretapping"; (2) "willfully attempting to learn the contents or meanings of a communication in transit over a wire;" and finally (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978).  The fourth clause of section 631(a) allows for an additional basis for liability for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" conduct outlined in the three preceding clauses.  Cal. Penal Code § 631(a).  Plaintiff alleges that Overstock engaged in conduct that violates all four clauses.  (Compl. ¶¶ 27, 30.)  For reasons discussed below, Plaintiff fails to state a claim under section 631(a).

### 1.  Plaintiffs' section 631(a) claim fails as a matter of law because Overstock cannot wiretap or eavesdrop on its own communications.

Plaintiff's claims that Overstock directly "wiretapped" and "eavesdropped" on its own conversations with Website users, who used the chat feature, fails as a matter of law because a party to a conversation cannot violate section 631 by recording that conversation.  *See, e.g.*, *Williams*, 2022 WL 17869275, at *2 ("Parties to a conversation cannot eavesdrop on their own conversation[.]"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (confirming that section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation").  This is because CIPA aims to protect the people's right of privacy from "new devices and techniques for the purpose of *eavesdropping* upon private communications."  Cal. Penal Code § 630 (emphasis added).  "Eavesdropping" is "[t]he act of secretly listening to the private conversation *of others* without their consent."  *Eavesdropping*, *Black's Law Dictionary* (11th Ed. 2019) (emphasis added).

Given this legislative purpose and the statute's text, courts have made clear that under section 631 "only a third party can listen secretly to a private

conversation," and that the statute does not cover "the recording of a conversation by a participant," no matter the means. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975); *see also Membrila*, 2010 WL 1407274, at *2 (finding that a party to a conversation could not have eavesdropped on its own communications because only a third party listening secretly to a private conversation can do so); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (affirming the dismissal of section 631 claims where "the pleadings demonstrate that Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims [] [b]ecause § 631 is aimed only at 'eavesdropping, or the secret monitoring of conversations by third parties'"); *cf. LoanMe*, 11 Cal. 5th at 194 n.4 ("The circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient—recordation would be expected with a facsimile or text transmission, for example.").

Because Plaintiff's section 631 claim against *Overstock* is premised on Overstock's alleged recording of conversations to which it was a party (Compl. Introduction, ¶¶ 11, 17), Overstock is not eavesdropping if it chooses to record its own conversations. *Graham*, 533 F. Supp. 3d at 831 (holding that "a party to a communication can record it (and is not eavesdropping when it does)"); *see also Warden*, 99 Cal. App. 3d at 811. For example, in *Graham*, the plaintiff alleged a section 631(a) violation against Noom, a web application operator, for creating a recording of its users' interactions with its website (such as their keystrokes, mouse clicks, and page scrolling) through a session replay software. *Graham*, 533 F. Supp. 3d at 827. There was no dispute between the parties that Noom and its users were the only parties to the communications. *Id*. at 831. In analyzing liability under section 631(a), the court noted that Noom would not be liable for recording its own communications. *Id.* Thus, the court's analysis focused on whether Noom was liable for aiding and abetting eavesdropping by allowing its session replay vendor to

capture data and host it on its servers. Like in *Graham*, there is no dispute that Overstock and its Website visitors were the only parties to the alleged chat conversations. As a matter of law, Overstock cannot be held liable for recording those conversations (or creating transcripts of those conversations thereafter).

### 2. Plaintiff cannot state a claim under aiding and abetting theory of liability.

Plaintiff likewise fares no better on his aiding and abetting theory of liability. Plaintiff claims Overstock also violated section 631(a) by aiding and abetting its third-party vendor to "intercept (during transmission and in real time), eavesdrop upon, and store transcripts of [Overstock's] chat communications." (Compl. ¶ 11.) Not so. Overstock cannot have aided and abetted Salesforce for the same reasons it cannot have eavesdropped on its own chat communications. Section 631 only imposes liability on *third parties* that either wiretap or aid and abet wiretapping, not on first parties who necessarily have access to the underlying communications. *See Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955–56 (E.D. Cal. 2012) (granting defendant's motion for summary judgment and dismissing section 631 aiding and abetting claims against a first party "[g]iven the settled nature of the third-party focus of section 631").

*Powell* is one of the only reported cases to directly address whether a party to a communication can be liable for aiding and abetting a third-party's act of wiretapping of the first party's own communication. In that case, the plaintiff alleged that a union officer eavesdropped on plaintiff's phone call with his former union supervisor. Plaintiff asserted aiding and abetting claims against his former supervisor, who was a party to the communication and permitted the alleged eavesdropping. *Id.* at 954. The plaintiff in *Powell* "contend[ed] that the language of section 631 is clear and a participant should be liable for aiding or conspiring with a third party to enable that party to listen in on the call." *Id.* The defendant argued that "section 631(a) applies to third party actions and therefore, as a party to the call, he

cannot be liable as a matter of law." *Id.* Carefully surveying longstanding precedent, the court agreed with defendant, stating:

> Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties. . . . The third party focus of section 631 is confirmed by *Rogers v. Ulrich*, 52 Cal.App.3d 894, 125 Cal.Rptr. 306 (1975), where the court held that only a third party could violate the section 631 proscription on eavesdropping. . . . Given the settled nature of the third-party focus of section 631, the court declines to adopt plaintiff's alternate reading.

*Id.* at 955–56 (internal quotation marks and citation omitted).

*Rogers* also unequivocally affirms that section 631 only prohibits eavesdropping by **third parties**. *See Rogers*, 52 Cal. App. 3d at 897–99. In *Rogers*, the defendant recorded his conversation with plaintiff using "a tape recorder jack [that] had been recently installed on [his] telephone by the telephone company." *Id.* at 897. The plaintiff there did not assert the defendant aided and abetted wiretapping by the telephone company because the telephone company provided tools to record the conversation. Like here, this would be absurd.

This interpretation of CIPA mirrors the federal Wiretap Act, which also exempts parties to the communication from liability. 18 U.S.C. § 2511(2)(c), (d); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted). The federal Wiretap Act also does not allow for **any** aiding and abetting liability, and thus any attempt to impute a broad construction of aiding and abetting liability under CIPA is fundamentally inconsistent with an identical analysis under both statutes. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012) (stating that "[a]ny temptation to read the statute as imposing aider-and-abettor liability is overcome by the illuminating statutory history of the civil-liability provision[,]" and concluding that "almost all courts to address the issue have held that § 2520 does not impose civil liability on aiders or abettors"). Consistent with

*Powell* (the only reasoned case on point) and the federal Wiretap Act, section 631 should not be drastically expanded to impose liability on parties to the communication.[4]

Even if Plaintiff could circumvent the party exception to bring an aiding and abetting claim, his section 631(a) claim would still fail because Salesforce was not an eavesdropper but rather an extension of Overstock.  The relevant inquiry in determining if a third party is an unlawful eavesdropper is "whether a website owner's usage of third-party recordation software can be considered equivalent to having hired a third party to record." *Williams*, 2022 WL 17869275, at *3; *see also Graham*, 533 F. Supp. 3d at 832.  In *Graham*, the court granted defendant's motion to dismiss because the third-party software employed by the website merely "captures its clients' data, hosts it on [its] servers, and allows their [website] to analyze their data." *Graham*, 533 F. Supp. 3d at 832.  The third-party software was essentially acting as a "tape recorder" by allowing Noom to track and store its own data in aid of its own business, and thus the third-party software was an extension of the Zoom website and not a third-party eavesdropper. *Id.* at 832–33 (citing *Rogers*, 52 Cal. App. 3d at 898).  Similarly, in *Williams*, the court dismissed a CIPA claim on the same basis because there were "no facts here to suggest that [the third-party vendor] 'intercepted and used the data itself.'" *Williams*, 2022 WL 17869275, at *5.  Here, it is unclear whether Plaintiff is alleging that Salesforce is the one recording the chat conversations, storing them, or both—highlighting the Complaint's failure to satisfy the notice pleading standard under Rule 8(a).  (Compl. ¶ 11.)  But it is clear

---

[4] Plaintiff's section 631 claim cannot be saved by amendment because he cannot allege, in good faith and in compliance with the obligations under Rule 11, that Overstock was not a party to the communication.  And as explained above, there can be no direct or aiding and abetting liability against a party to the communication.  As such, this Court should dismiss Plaintiff's claim with prejudice. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal.") (internal citation omitted).

that Plaintiff alleges no facts to suggest that Salesforce is using the chat data for its own business purposes, as opposed to storing chat conversations for Overstock's record keeping or use.  As a third-party vendor hired by Overstock to record and/or store Overstock's chat communications like a tape recorder, Salesforce is an extension of Overstock, not an eavesdropper, and the claim accordingly must fail.

Recent case law finding third-party liability does not help Plaintiff.  First, Plaintiff finds no solace in *Revitch v. New Moosejaw, LLC*, where the court held that parties to communications are not necessarily immune from section 631 liability, *without articulating any reasoned basis for such holding*.  No. 18-cv-06827, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).  Notably, the *Revitch* court dismissed well-established precedent (as described in *Powell*)—which clearly held that there is no aiding and abetting liability for parties under section 631—merely dropping a *contra* cite without any explanation as to why it declined to follow it.  *Id.* at *2 n. 2.  Furthermore, as the court pointed out in *Graham*, *Revitch* involved a third-party who "mined information from other websites and sold it" and thus was not merely performing functions akin to a tape recorder as in *Rogers*.  *Graham*, 533 F. Supp. 3d at 832.  As such, this Court should decline to follow *Revitch*, which misapplied the case law and incorrectly denied dismissal of a section 631 claim against a first party to a purported communication.  So too for *Saleh v. Nike, Inc.*, which relied on *Revitch* to find that plaintiff sufficiently alleged aiding and abetting liability against Nike for allowing its vendor FullStory to record its website user's interactions in real time. 562 F. Supp. 3d 503, 519–21 (C.D. Cal. 2021).  There, like *Revitch*, the court failed to address cases interpreting section 631 to exempt first party liability, only stating that "[t]he text of section 631(a) . . . does not contain any such exception[.]"  *Id.* at 520.  Moreover, in both *Revitch* and *Saleh*, plaintiffs alleged that *third-party* code was embedded in the websites that redirected communications to the third party.  *Revitch*, 2019 WL 5485330, at *1; *Saleh*, 562 F. Supp. 3d. at 521.  By contrast here, Plaintiff fails to allege that the embedded code in Overstock's chat feature is

1  indeed Salesforce's code, or that Salesforce did anything to "intercept" or redirect
2  the communications (*see* Compl. ¶ 11), as explained further below.  *See infra at*
3  IV.C.3.c.ii.

4       Plaintiff's claim is similarly unsupported by *Javier v. Assurance IQ, LLC*, 20-
5  cv-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023).   There, the court
6  incorrectly reasoned that section 631 liability should not turn on the "intentions and
7  usage of" the communication at issue by a prospective third party to a
8  communication.   But the Court then admitted that a third party who lacked the
9  "capability to use its record of the interaction for any other purpose (just as a tape
10  recorder has no independent capability to divulge the recording for any other purpose
11  but that of its owner)" was not an eavesdropping third party in violation of section
12  631.  The *Javier* court thus actually agrees with the holdings in *Graham* and *Williams*
13  described above:  There is no section 631 violation if the third-party vendors did not
14  analyze or use the recorded data in any way.[5]

15            **3.**    **Plaintiff fails to state a claim under any of the operative**
16                    **clauses.**

17       Notwithstanding the above, Plaintiff's section 631(a) claim independently fails
18  because he does not allege the required elements under the three operative clauses.

19            **a.**    **Plaintiff fails to state a claim under the first clause**
20                  **because it does not apply to internet communications.**

21       To state a claim under the first clause of section 631(a), Plaintiff must
22  specifically allege that Overstock unlawfully accessed his communication by
23  intentionally "tap[ping], or ma[king] any unauthorized connection . . . with any
24  telegraph or telephone wire, line, cable, or instrument."  Cal. Penal Code § 631(a);
25  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020)
26  (holding that CIPA claim under first clause must be dismissed if allegations do not
27  show that the technology at issue "operates using telegraph or telephone wires").  The

---

[5] None of these three cases involved chat messages where the user knows that the communication must be recorded for the chat conversation to even occur.

first clause of section 631(a) applies to "telephonic wiretapping specifically" and "does not apply to the context of the internet." *Williams*, 2022 WL 17869275, at *2.

Nowhere does the Complaint allege that Plaintiff's communications were transmitted over "telephone or telegraph wires, lines, cables, or instruments," as required for the first clause of section 631. Plaintiff alleges that he communicated with Overstock via the chat feature on Overstock's Website, *i.e.*, the Internet (Compl. ¶ 30), and that he used his smartphone to communicate with Overstock, which "are transmitted . . . by telephony." (*Id.* ¶¶ 17–18.) However, mere use of a smartphone to access a website chat feature, and generalized allegations about "telephony," fail to demonstrate that Plaintiff's particular communications with Overstock passed over—and were intercepted through—the "telegraph or telephone wires, lines, cables, or instruments" the statute's plain language requires. Indeed, courts have repeatedly and "overwhelming[ly]" refused to expand the reach of the first clause to Internet-based communications, including those using smartphones.[6] *See, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) (refusing to apply the first clause of section 631 where plaintiff's complaint "plainly does not involve any allegations concerning 'telephone wires, lines, or cables,'" and rejecting plaintiff's argument that a smartphone qualified as a "telephone instrument"); *Williams*, 2022 WL 17869275, at *3. Instead, Internet-based communications fall under the second clause of section 631. *Id.* Plaintiff's online communication simply does not fall within the first clause of section 631. As a result, his claim fails as a matter of law.

///

///

---

[6] To the extent Plaintiff relies on *Javier v. Assurance IQ LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) to suggest that the first clause applies to Internet communications (*see* Compl. ¶ 28), he is incorrect. *Javier* assessed defendants' liability under the *second clause* of section 631(a) to which, unlike the first clause, Internet communication does apply. *See Javier,* 2022 WL 1744107, at *1.

**b.    Plaintiff fails to state a claim under the first clause because the software allegedly employed by Overstock is not a "machine, instrument, or contrivance."**

Section 631(a) prohibits a person from intentionally wiretapping or making an unauthorized connection "by means of any machine, instrument, or contrivance[.]" As an initial matter, Plaintiff fails to allege any "machine, instrument, or contrivance" that Overstock utilized in allegedly wiretapping their communications.  Rather, the Complaint contains a conclusory allegation that "the software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a 'machine, instrument, contrivance, or other manner[.]'" (Compl. ¶ 29.)  Yet, he does not offer any explanation as to *how* the embedded software falls into one of the three categories enumerated in the statute.  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 937 (finding that plaintiffs have not stated a CIPA claim because they failed to explain how Facebook's cookies fall into one of the three categories enumerated in the statute (*i.e.,* machine, instrument, or contrivance)).  Nor could he—courts interpreting the federal Wiretap Act, which (like CIPA) requires the use of a "device," have held that software, without more, does not constitute a "device" under the wiretap law.  *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (finding that the drive or server on which the e-mail was received does not constitute a "device" under the federal Wiretap Act); *see also Potter v. Havlicek*, No. 3:06-cv-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (finding that software "alone cannot be used to intercept communications" under the federal Wiretap Act and that "[i]t must be installed in a device, such as a computer, to be able to do so").  Plaintiff's section 631(a) claim independently fails for this reason.

///

///

///

1
2
3

         **c.**     **Plaintiff fails to state a claim under the second clause because he failed to allege interception of any "content" while "in transit."**

4
5
6
7
8
9
10
11
12

Under section 631's second clause, a plaintiff must allege that the defendant "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[ed] to read, or to learn *the contents* or meaning of any message, report, or communication while the same [was] *in transit* or passing over any wire, line, or cable, or [was] being sent from, or received at any place within [California]." Cal. Penal Code § 631(a) (emphasis added). Thus, to state an eavesdropping claim against Overstock, Plaintiff must plausibly allege that Overstock eavesdropped on the "contents" of his communication while that communication was "in transit." Plaintiff fails to satisfy these elements.[7]

13

         **i.**     **Plaintiff has not alleged any "contents."**

14
15
16
17
18
19
20
21
22
23
24
25

The second clause of section 631(a) prohibits the "unauthorized access of the 'contents' of any communication." *Brodsky*, 445 F. Supp. 3d at 127 (quoting Cal. Penal Code § 631(a) and finding that plaintiffs failed to identify the contents of any communication that Apple allegedly intercepted). The analysis of whether information amounts to "contents" of a communication under CIPA is the same under the federal Wiretap Act. *Id*. "Contents," in both contexts, means "information concerning the substance, purport, or meaning of [a] communication," and does not include record information captured generated during that communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105–06 (9th Cir. 2014); *Graham*, 533 F. Supp. 3d at 833 (IP addresses, locations, browser types, and operating systems are not "content" for purposes of CIPA); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same); *Yoon v. Lululemon USA,*

26

_____

27
28

[7] Moreover, while Plaintiff alleges that he is a California resident (Compl. ¶ 4), he fails to allege that any of his communications with the Website occurred while he was in the state. Because he failed to allege a crucial element of section 631, any argument under section 631 independently fails on this ground.

*Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (shipping and billing information, the date and time of the visit, and the duration of the visit are also not "content" for purposes of CIPA).

Here, Plaintiff alleges only that he "had a conversation with [Overstock]" on some unspecified date and does not allege what "contents" of his communication were intercepted, if any.  (Compl. ¶ 17.)  And while Plaintiff speculates that other visitors *might* "share highly sensitive personal data with [Overstock] via the website chat feature," he does not allege that he shared *any* content (let alone any personal information) himself.  (*Id.*)[8]  These threadbare allegations do not pass muster under Rule 12(b)(6).  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 937 (granting motion to dismiss where plaintiffs only included "generalized facts" that did not adequately allege that "Facebook obtained the contents of a communication attributable to any of them"); *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 2812188, at *15 (N.D. Cal. July 18, 2022) (granting motion to dismiss where "information about personal habits and identities" did not constitute "content" of a communication, such that plaintiffs could not allege that Google had intercepted "content" under the statute).

### ii.    Plaintiff has not alleged any interception "in transit."

Plaintiff fails to sufficiently plead that his communication was intercepted while "in transit."  Cal. Penal Code § 631(a).  When examining the "in transit" requirement, courts have interpreted section 631 to be coextensive with the federal Wiretap Act.  *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228

---

[8] Notably, Plaintiff claims that "*[g]iven the nature of [Overstock's] business*, visitors often share highly sensitive data with [Overstock] via the website chat feature."  (Compl. ¶ 13 (emphasis added).)  Yet Plaintiff makes no attempt to explain how the nature of Overstock's business—as an online retailer that offers home goods products for sale—causes its visitors to share highly personal sensitive data over the chat feature.  Plaintiff used these same boilerplate allegations *verbatim* in his other lawsuits against ten other defendants, as discussed above, without any regard for the actual "nature of [their] business[es]."

n.9 (C.D. Cal. 2017) (interpreting Wiretap Act); *see also* 18 U.S.C. §§ 2510 *et seq*. For a communication to be "intercepted" under the Wiretap Act, "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (adopting a "narrow" definition of "intercept" under the Wiretap Act, *i.e.,* "acquisition contemporaneous with transmission"). Thus, the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course *before arrival*." *Id*. (emphasis added) (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)); *see also NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014) (discussing that defendants' actions must "halt the transmission of the message to their intended recipients," not access from storage after receipt); *Mireskandari v. Mail*, No. CV 12-02943 MMM (FFMx), 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (finding plaintiff failed to plausibly allege CIPA claim under the second clause where complaint failed "plausibly to plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage").

Here, the Complaint is silent as to the nature and timing of any alleged interception as well as the mechanism in which the interception happened in "real time." Merely invoking the words "real-time" and "intercept" repeatedly does not suffice. *See Rodriguez v. Google LLC,* No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (dismissing section 631 claim despite repeated allegation of "intercept" in Amended Complaint). Plaintiff's allegations that communications are "intercept[ed]" "during transmission and in real time" do not address the very narrow window during which Overstock (or Salesforce) could "intercept" the communications—these are legal conclusions, not factual allegations. *See Mastel*, 549 F. Supp. 3d at 1136 (dismissing claim where there were "no allegations in the complaint that reasonably give rise to the inference that [the defendant] ever read or learned the contents of a communication while . . . in transit, or in the process of

being sent or received").  To the extent the Complaint describes the interception process at all, it implies that Overstock first "automatically records and creates transcripts" of the conversations and then separately allows Salesforce to "intercept, eavesdrop on, and store" those transcripts.  (Compl. ¶11; *see also id*. Introduction; *id.* ¶ 13 ("Defendant secretly records those conversations, and . . . allows a third party to eavesdrop on those conversations in real time"); *id.* ¶ 24.)  Recording and then transmitting communications in this manner fails to plead a plausible claim of interception.  *Rodriguez,* 2022 WL 214552, at *2 (dismissing complaint where alleged theory "was essentially one of logging and then transmitting," as "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts" plausible to state a claim under section 631(a)).

As such, Plaintiff's bare allegations do not state a claim.  *See Rosenow v. Facebook, Inc.,* No. 19-CV-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting a motion to dismiss because the complaint's allegation that the recording occurred "during transit" was "conclusory"); *Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing section 631(a) claim because the plaintiff "has not alleged facts giving rise to an inference that his communications were intercepted while 'in transit' as required under section 631 of the California Penal Code"); *see also Vizio, Inc.*, 238 F. Supp. 3d at 1228 (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs 'in real-time'") (citation omitted).

### d. Plaintiff fails to state a claim under the third clause because his claims under the first two clauses fail.

Without pleading a claim under the first two clauses of section 631(a), Plaintiff cannot successfully bring a claim under the third clause.  Section 631(a)'s third clause prohibits anyone from "attempting to use or communicate information obtained as a

result of engaging in either of the previous two activities." *Tavernetti*, 22 Cal. 3d at 192.  Thus, Plaintiff "must establish that the information at issue . . . was obtained through a violation of the first or second clauses."  *In re Google Assistant*, 457 F. Supp. 3d at 827 (interpreting *Tavernetti* and finding that plaintiffs' failure to plead defendants' violation of the first or second clause of section 631 meant they also failed to plead defendants' violation of the third clause).  Because Plaintiff failed to state a claim under section 631(a)'s first or second clauses for reasons stated above, his claim that Overstock violated section 631(a) under the third clause fails as a matter of law.

## D.   Plaintiff Fails to State a Claim Under Section 632.7.

Section 632.7's plain language states that the communication at issue must be transmitted between *two telephonic devices*, which did not occur here.  A person "who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted *between* [1] two cellular radio telephones, [2] a cellular radio telephone and a landline telephone, [3] two cordless telephones, [4] a cordless telephone and a landline telephone, or [5] a cordless telephone and a cellular radio telephone" is liable for violating section 632.7. Cal. Penal Code § 632.7 (emphasis added).  The text of § 632.7 identifies an *exclusive* list of the five *types of calls* and the types of phones implicated by the statute; the omission of other types of calls or phones is purposeful and means such calls or phones are not covered by the law.  Moreover, section 632.7 does *not* apply if an enumerated telephone technology is used on only *one* side of a communication.  *See Hataishi v. First Am. Home Buyers Protection Corp*., 223 Cal. App. 4th 1454, 1469 (2014) (the type of telephone used on both sides of recorded communications must be established); *Meacham v. El Pollo Loco, Inc*., No. 30-2016-00888774-CU-BT-CXC, 2020 WL 7866013, at *2 (Cal. Super. Sept. 10, 2020) (same).

Plaintiff's section 632.7 claim fails because he cannot allege the use of telephone ("landline," "cellular" or "cordless") on *both* ends of his alleged communication with Overstock.  First, the Complaint does not once mention that Overstock communicated with Plaintiff via a telephone and, in fact, pleads the opposite—that Overstock communicated via the Internet.  (*See* Compl. ¶¶ 9, 11, 17, 18.)  But, as explained above, section 632.7 pertains to communications transmitted "between" two telephones.  *See* Cal. Penal Code. § 632.7.  In a last-ditch effort to salvage his claim, Plaintiff vaguely asserts that "Defendant's communication from the chat feature on its website is transmitted via telephony . . . ." (Compl. ¶ 37.)  The Court, however, should not entertain Plaintiff conflation of "telephony" and "telephone" that is without support and goes against the plain language of the statute.  *See* Cal. Penal Code § 632.7(a).

Second, even if Plaintiff could allege that Overstock communicated via a telephone (which he cannot), the alleged fact that Plaintiff accessed Overstock's website via a smartphone, which performs the function of a computer, does not mean that Plaintiff communicated with Overstock using a telephone. *See supra at* IV.C.3.a. (*citing Mastel*, 549 F. Supp. 3d at 1135).  Because Plaintiff cannot allege that either he or Overstock communicated via a telephone, his claim under section 632.7 must fail.

Finally, Plaintiff points to the definition of "communication" in section 632.7 ("communications transmitted by [voice], data, image, including facsimile"), and argues that "[t]ext messages sent from a smart phone to a computer or internet . . . are considered data transmissions via cellular telephony to landline telephony[.]" (Compl. ¶ 34.)  Yet, Overstock is unaware of a single court that has expanded the meaning of "communication" under section 632.7 to include chat/text messages (or even emails) *not* between two telephones, as Plaintiff proposes here.[9]  And for good

_____

[9] Plaintiff's reliance on *Adler v. Community.com, Inc.,* No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) to expand the reach of section 632.7 to "internet data communications" is unavailing.  There, the communication was not

1  reason.  Plaintiff's expanded definition of "communication" would unacceptably
2  render superfluous the Legislature's enumeration of five different types of *telephone*
3  communications listed in the statute's text.  Instead of listing the various types of
4  telephones, the Legislature could have simply written section 632.7 to apply to the
5  interception of "a communication."  *See* Cal. Penal Code § 632.7.  But the Legislature
6  "did not write the statute that way."  *Corley v. U.S.*, 556 U.S. 303, 305 (2009), *quoting*
7  *Russello v. United States*, 464 U.S. 16, 23 (1983); *Imperial Merchant Servs., Inc. v.*
8  *Hunt*, 47 Cal. 4th 381, 390 (2009) ("Statutes must be interpreted, if possible, to give
9  each word some operative effect.").  And section 632.7 should be construed in a way
10  that does not render its provisions superfluous.  *Metcalf v. Cnty. of San Joaquin*, 42
11  Cal. 4th 1121, 1135 (2008) ("Plaintiff's interpretation would transform the highly
12  meaningful words "negligent or wrongful" into meaningless surplusage, contrary to
13  the rule of statutory interpretation that courts should avoid a construction that makes
14  any word surplusage.").    Moreover, Plaintiff's reading of the statute would
15  essentially criminalize the "recording" of communications sent in written form,
16  creating an affirmative obligation for companies to delete all text-based
17  "communications" they receive.[10]   The Court should reject Plaintiff's attempt to
18  expand section 632.7 to Internet-based communications.  And as Plaintiff failed to
19  allege that the communications occurred between cellular and cordless telephones,
20  his section 632.7 claim fails as matter of law.

21  **V.    CONCLUSION**
22      For the foregoing reasons, Plaintiff fails to state a claim under sections 631 or
23

24  Internet-based; the fact that the communication occurred between two cellular
   phones was not in dispute.  *Id*. at *5.  The court's decision in *Kearny v. Salomon*
25  *Smith Barney, Inc.,* 39 Cal. 4th 95 (2006), is similarly inapt because that case
   discussed CIPA section 632, a violation of which has not been alleged by Plaintiff
26  here.
   [10] Moreover, as the California Supreme Court noted in *LoanMe*, 11 Cal. 5th at 194,
27  "[t]he circumstances involved with certain kinds of communications may lead to a
   reasonable inference that a party sending a communication has consented to having
28  it recorded by the intended recipient—recordation would be expected with a
   facsimile or text transmission, for example."  *Id*. at 194 n.4.

1   632.7.  Overstock respectfully requests that Plaintiff's Complaint be dismissed with

2   prejudice because the defects cannot be remedied by amendment.

3

4   Dated: January 24, 2023                COOLEY LLP

5

6                           By: */s/ Kyle C. Wong*

7                              Kyle C. Wong

8                          Attorneys for Defendant
                             *Overstock.com., Inc.*

9

10  279331005

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28